COURT OF APPEALS OF VIRGINIA

Present:   Judges Alston, Chafin and Senior Judge Haley
Argued at Fredericksburg, Virginia

UNPUBLISHED

DEANNA LONGERBEAM

MEMORANDUM OPINION* BY
JUDGE TERESA M. CHAFIN
OCTOBER 31, 2017

v.      Record No. 2126-16-4

FAUQUIER COUNTY DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Herman A. Whisenant, Jr., Judge Designate

Harold N. Ward, Jr. (The Ward Law Office, P.C., on brief), for
appellant.

Robert F. Beard; Lori V. Battistoni, Guardian *ad litem* for the
minor children (Vanderpool, Frostick & Nishanian, P.C., on brief),
for appellee.


On January 25, 2017, the Circuit Court of Fauquier County ("circuit court') terminated

Deanna Longerbeam's residual parental rights pertaining to her twin daughters, D. and L.  The

circuit court also concluded that adoption was in the best interests of Longerbeam's daughters

and approved permanency plans for them with that stated goal.  On appeal, Longerbeam

challenges the circuit court's decision in five assignments of error.  Specifically, Longerbeam

contends that the circuit court erred by:  1) permitting a social worker to testify about whether

Longerbeam demonstrated appropriate parenting skills, 2) sustaining an objection to questions

regarding how Longerbeam parented her older children, 3) determining that the expert testimony

of a witness offered by the Fauquier County Department of Social Services ("DSS") was more

credible than the testimony offered by Longerbeam's expert witness, 4) concluding that

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Longerbeam had not substantially remedied the conditions that resulted in her children's placement in foster care, and 5) concluding that placing Longerbeam's children for adoption was in their best interests.[1] For the reasons that follow, we affirm the circuit court's decision.

## I.  BACKGROUND

"When reviewing a [circuit] court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Boatright v. Wise Cty. Dep't of Soc. Servs., 64 Va. App. 71, 76, 764 S.E.2d 724, 727 (2014) (quoting Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003)).  So viewed, the evidence is as follows.

On the evening of March 23, 2015, Longerbeam stabbed herself in the leg multiple times with a pair of cuticle scissors.  At the time, Longerbeam had very limited financial resources.  She and her then-five-year-old twin daughters, D. and L. (born November 26, 2009), were living in a hotel room.  Longerbeam believed that stabbing herself would force other individuals to help her financially.

Longerbeam had previously been diagnosed with bipolar disorder.  Shortly after the birth of D. and L., Longerbeam was hospitalized due to this condition for an extended period of time.[2] At the time of the stabbing incident, Longerbeam had stopped taking the psychiatric medication prescribed to manage her mental health condition.

After she stabbed herself, Longerbeam called a friend from her church and asked her to take care of D. and L.  After her friend picked up her children, Longerbeam was placed in inpatient psychiatric care.  She was released from the hospital on April 2, 2015.

---

[1] We have modified the order of Longerbeam's assignments of error to address them more efficiently in this opinion.

[2] Although Longerbeam testified that she was hospitalized for ten days for the treatment of her bipolar disorder, her daughter testified that she was hospitalized for six weeks.

Longerbeam's friend placed D. and L. in the care of another couple shortly after she picked them up from the hotel. Although Longerbeam did not personally know these individuals before they began caring for her children, D. and L. stayed with them for approximately two months. Eventually, the couple contacted DSS about Longerbeam's children because they could not obtain medical care for them when they became ill.

After the couple contacted DSS, D. and L. were placed in foster care. DSS then implemented foster care plans designed to return the children to Longerbeam's care. The foster care plans addressed Longerbeam's housing and financial situation and her parenting skills. They also addressed her mental health. The foster care plans required Longerbeam to take her psychiatric medication on a daily basis as prescribed by her physician. They also required Longerbeam to participate in a complete psychological evaluation and follow all treatment recommendations. Additionally, Longerbeam was required to attend all of her therapy appointments with the local community services board.

Longerbeam completed many of the requirements of her children's foster care plans. She obtained employment and a suitable home for herself and D. and L. She also visited her children on a regular basis and completed the required parenting classes. Notably, Longerbeam took her psychiatric medication as prescribed and consistently visited her physician for the management of that medication. She also participated in the required psychological evaluation.

Longerbeam, however, failed to routinely participate in therapy. While Longerbeam attended three therapy appointments with the counselor provided by the local community services board, she stopped attending therapy when she moved to a different county. Longerbeam explained that she had participated in therapy in the past and that she felt like her medication adequately managed her mental health conditions. Longerbeam preferred to

participate in faith-based groups rather than the therapy recommended by DSS and her psychological evaluation.

Eventually, DSS filed a petition to terminate Longerbeam's residual parental rights regarding D. and L. based on her failure to comply with the mental health requirements of her children's foster care plans. On July 22, 2016, the Juvenile and Domestic Relations District Court of Fauquier County ("JDR court") concluded that Longerbeam had failed to remedy the conditions that led to her children's placement in foster care and terminated her residual parental rights pertaining to D. and L. pursuant to Code § 16.1-283(C)(2).[3] The JDR court also approved foster care plans for the children with the goal of adoption. Longerbeam appealed the JDR court's decision to the circuit court.

The circuit court held a termination hearing in this matter on November 30, 2016. At this hearing, DSS presented testimony establishing the circumstances leading to the placement of D. and L. in foster care, the services that Longerbeam was offered to remedy the conditions that led to her daughters' placement in foster care, and the progress that Longerbeam had made in the elimination of those conditions.

Holly Anderson, the DSS employee who worked on Longerbeam's case, testified about Longerbeam's compliance with the requirements of her children's foster care plans. Anderson testified that Longerbeam had followed through with some of the mental health requirements of the foster care plans by attending appointments with her psychiatrist and consistently taking her psychiatric medication. Anderson explained, however, that Longerbeam had failed to participate in the therapy recommended by the foster care plans.

---

[3] The JDR court also terminated the residual parental rights of the father of D. and L. Although the father appealed the JDR court's termination decision to the circuit court, he did not appeal the circuit court's termination decision to this Court.

Anderson also testified about Longerbeam's parenting skills. Anderson testified that Longerbeam had not demonstrated "parenting skills" or "the ability to place the children's needs before her own." Anderson also described specific instances of Longerbeam's parenting behavior that she observed during Longerbeam's visitation with her daughters. Anderson explained that Longerbeam occasionally had trouble focusing on the visits with her daughters and that she "obsessively" checked her daughters' bodies for signs of physical abuse. Anderson then testified that she believed Longerbeam could not safely parent D. and L.

DSS also offered testimony from Edwin N. Carter, the clinical psychologist who completed the psychological evaluation of Longerbeam.[4] Carter completed his initial evaluation of Longerbeam in July 2015, and he met with her to explain the results of the evaluation in September 2015. When Carter initially evaluated Longerbeam, he administered a series of psychological tests and interviews over the course of approximately three hours. Carter also completed a three-hour follow-up examination of Longerbeam consisting of an interview and additional testing in February 2016. Carter's written reports based on the initial July 2015 evaluation and the follow-up February 2016 evaluation were introduced into evidence.

During the initial evaluation, Carter noted that Longerbeam presented herself in a "highly jovial fashion, laughing freely and being completely at ease." He also noted that her "judgment appeared somewhat impaired" and that her "insight appeared lacking for a person of her age and experience." Carter testified that Longerbeam exhibited similar behavior during the follow-up examination in February 2016, and he characterized her behavior as "grossly inappropriate to the situation."

---

[4] Longerbeam stipulated that Carter was an expert in "general psychology for adults and children."

Based on his observations and the psychological testing that he performed, Carter diagnosed Longerbeam with a "blatant" bipolar disorder, attention-deficit disorder, and acute learning disabilities. Carter explained that Longerbeam's behavior was consistent with hypomania, a symptom of bipolar disorder. He also explained that the persistence of Longerbeam's hypomanic behavior indicated that her bipolar disorder was not adequately managed.

Due to her mental health disorders, Carter concluded that Longerbeam could not independently parent D. and L. Carter explained that Longerbeam's mental health condition limited her ability to effectively take care of herself and others, and determined that she would pose a risk to her children's safety if they were left in her care. Carter further explained that Longerbeam would require "many years" of medication and therapeutic treatment to stabilize her condition to a degree that would allow her to independently care for her children.

Carter also testified about the special needs of Longerbeam's children. Based on similar psychological evaluations, Carter determined that both D. and L. had learning disabilities and emotional disorders that would require increased parental attention. Carter explained that Longerbeam would have difficulty meeting the increased needs of her daughters due to her mental health condition.

Longerbeam presented the testimony of Ronald Schmal, the clinical psychologist who worked with her at the local community services board, to rebut the testimony of Carter. Like Carter, Schmal diagnosed Longerbeam with bipolar disorder and attention deficit disorder. Unlike Carter, however, Schmal concluded that Longerbeam's mental health condition was stable and that she could safely parent her children.

Schmal based his opinions on his interactions with Longerbeam, and he acknowledged that he had only seen Longerbeam three times. Schmal had not seen Longerbeam or had any

contact with her since October 14, 2015, the date of her last therapy session. Schmal admitted that Carter's evaluation of Longerbeam was based on more current information. Schmal also acknowledged that he had not performed any psychological testing on Longerbeam.

Although Schmal concluded that Longerbeam was mentally stable in October of 2015, he explained that additional therapy would have helped manage her mental health condition. Schmal testified that Longerbeam should have attended therapy as often as every week shortly after her intake at the community services board. Schmal also recognized that Longerbeam's condition could deteriorate rapidly if she stopped taking her medication.

Longerbeam testified about the steps that she had taken to comply with her children's foster care plans. She also testified about how she parented her four other children. Longerbeam testified about how she was involved in her children's education and extracurricular activities. Additionally, Longerbeam's adult daughter testified about how Longerbeam cared for her teenage children while they were still living with her after her mental health condition began to deteriorate in 2009.[5]

At the conclusion of evidence, DSS argued that Longerbeam had failed to remedy the conditions that led to the placement of D. and L. in foster care. Based on Carter's testimony and his observations of Longerbeam's behavior, DSS contended that Longerbeam's bipolar disorder was not adequately managed. Therefore, DSS concluded that Longerbeam could not safely parent her children. The guardian *ad litem* appointed for D. and L. agreed with DSS's position.

In contrast, Longerbeam argued that she had substantially complied with all of the requirements of her children's foster care plans. While Longerbeam admitted that she did not attend therapy, she argued that she stabilized her mental health condition within months of her

---

[5] Although Longerbeam still had custody of her teenage children, they lived with her adult daughter. They were not present when Longerbeam stabbed herself on March 23, 2015, and they did not live with her following this incident.

children's placement in foster care. Longerbeam emphasized that she consistently took her psychiatric medication and routinely visited a psychiatrist. She also emphasized Schmal's conclusion that she was mentally stable.

After hearing the parties' arguments, the circuit court concluded that Longerbeam had failed to remedy the conditions that led to her children's placement in foster care and terminated her residual parental rights pursuant to Code § 16.1-283(C)(2). Although the circuit court acknowledged that the expert testimony offered by Carter and Schmal conflicted, the circuit court accepted Carter's testimony because he had performed a more thorough evaluation of Longerbeam and he had seen her more recently. The circuit court also expressly acknowledged that both D. and L. had special needs and that it would not be in their best interests to return them to the care of their mother.

On January 25, 2017, the circuit court entered orders terminating Longerbeam's residual parental rights and approved permanency plans for D. and L. with the goal of adoption. This appeal followed.

## II. ANALYSIS

Longerbeam presents five assignments of error for appellate review, two of which present challenges to the circuit court's evidentiary decisions. Longerbeam contends that the circuit court erred by: 1) allowing Anderson to provide opinion testimony regarding Longerbeam's parenting skills, and 2) sustaining DSS's objection to a question regarding the education of Longerbeam's adult children. Longerbeam's remaining assignments of error address the circuit court's decisions to terminate her residual parental rights regarding D. and L. and approve permanency plans for them with the goal of adoption. Longerbeam argues that the circuit court erred by: 1) accepting the testimony of Carter over the testimony of Schmal, 2) determining that Longerbeam had failed to remedy the conditions that led to the placement of D. and L. in foster

- 8 -

care, and 3) concluding that the termination of Longerbeam's residual parental rights and the subsequent placement of her children for adoption was in their best interests. We disagree with each of Longerbeam's arguments.

## A. ANDERSON'S TESTIMONY CONCERNING LONGERBEAM'S PARENTING SKILLS WAS ADMISSIBLE LAY OPINION TESTIMONY

On appeal, Longerbeam contends that the circuit court erred by allowing Anderson to testify that Longerbeam did not "demonstrate parenting skills and the ability to place the children's needs before her own." Longerbeam notes that Anderson was not qualified as an expert witness in the field of parenting, and argues that the testimony at issue constituted an impermissible expert conclusion. We disagree.

We begin our analysis by acknowledging that "the admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 132, 409 S.E.2d 460, 465 (1991) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)). When we review Longerbeam's argument under this established standard, we conclude that the circuit court did not err by admitting the testimony at issue.

Code § 8.01-401.3(B) provides that "[n]o expert *or lay witness* while testifying in a civil proceeding shall be prohibited from expressing an otherwise admissible opinion or conclusion as to any matter of fact solely because that fact is the ultimate issue or critical to the resolution of the case." (Emphasis added). Additionally, Rule 2:701 of the Virginia Rules of Evidence states, in pertinent part, that "*[o]pinion testimony by a lay witness is admissible* if it is reasonably based upon the personal experience or observations of the witness and will aid the trier of fact in

understanding the witness' perceptions."[6]  (Emphasis added).  Thus, opinion testimony from a lay witness is clearly admissible under the appropriate circumstances.

In the present case, Anderson was the DSS employee with the primary responsibility for Longerbeam's case.  While Anderson was not qualified as an expert witness, she expressed opinions about Longerbeam's parenting skills as a lay witness.  Anderson based her opinions on her personal experiences with Longerbeam throughout her involvement with DSS and her observations of Longerbeam's parenting behavior.  As Anderson's opinions were based upon her personal experiences and observations, they constituted admissible lay opinion testimony.  See Va. R. Evid. 2:701.

Moreover, any error that may have resulted from the admission of Anderson's opinion testimony was clearly harmless.  Code § 8.01-678 sets forth Virginia's standard for non-constitutional harmless error.  That statute states, in pertinent part:

> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any error committed on the trial.

Accordingly, "[i]f, when all is said and done, [it is clear] that the error did not influence the [fact finder], or had but slight effect, [the decision of the fact finder] . . . should stand."  Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764 (1946)).  Furthermore, the "[i]mproper admission of evidence does not create reversible error when it is merely cumulative of other competent evidence properly admitted."  Greenway v. Commonwealth, 254 Va. 147, 154, 487 S.E.2d 224, 228 (1997).

---

[6] While Code § 8.01-401.3(B) and Rule 2:701 prohibit both expert and lay witnesses from testifying regarding opinions of law, Longerbeam did not argue that Anderson's conclusions constituted opinions of law rather than opinions of fact.  Nonetheless, we note that Anderson's opinions clearly involved issues of fact rather than issues of law.

Assuming that the circuit court improperly admitted Anderson's testimony, the testimony at issue "had but slight effect" on the circuit court's decision. See Clay, 262 Va. at 260, 546 S.E.2d at 731. The evidence was cumulative of other competent evidence presented at the termination hearing. While Anderson testified generally about Longerbeam's parenting skills, she also testified about specific instances when she observed Longerbeam display inappropriate parenting behavior. Additionally, Carter concluded that Longerbeam could not safely parent her children. Although the circuit court expressly addressed Carter's conclusions, it did not mention Anderson's testimony. For these reasons, any error potentially committed in the admission of the challenged testimony was clearly harmless.

As we conclude that the circuit court did not err by admitting Anderson's opinion testimony, and alternatively, that any error potentially resulting from the admission of the testimony at issue was harmless, we reject Longerbeam's assignment of error pertaining to this issue.

### B.  THE EXCLUDED EVIDENCE PERTAINING TO THE EDUCATION OF LONGERBEAM'S ADULT CHILDREN WAS NOT RELEVANT

Longerbeam also contends that the circuit court erred by sustaining DSS's objections to questions regarding how she parented her older children. The circuit court, however, only sustained DSS's objection to one question on this subject. When Longerbeam's counsel asked her where her two adult children went to high school, DSS objected on the grounds that the question was irrelevant to the present case. After the circuit court sustained the objection, Longerbeam's counsel failed to ask her any other questions specifically related to her adult children and DSS did not object again when Longerbeam referred to them in her testimony.

As an initial matter, we note that Longerbeam failed to proffer the answer to the question at issue in this assignment of error. "When an appellant claims a trial court abused its discretion in excluding evidence, we cannot competently determine error – much less reversible error –

without 'a proper showing of what that testimony would have been.'" Tynes v. Commonwealth, 49 Va. App. 17, 21, 635 S.E.2d 688, 689 (2006) (quoting Holles v. Sunrise Terrace, Inc., 257 Va. 131, 135, 509 S.E.2d 494, 497 (1999)).  Under the present circumstances, however, we conclude that Longerbeam's failure to proffer the expected answer to the question at issue is not, in itself, fatal to her case.  Any potential answer that Longerbeam may have provided to the question at issue was clearly irrelevant.

As previously stated, "the admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Logan, 13 Va. App. at 132, 409 S.E.2d at 465 (quoting Blain, 7 Va. App. at 16, 371 S.E.2d at 842).  Evidence is relevant when it has "any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence."  Va. R. Evid. 2:401.

In the present case, the identity of the high school where Longerbeam's two adult children were educated could not have been relevant to the termination of her residual parental rights pertaining to D. and L.  Furthermore, the circuit court gave Longerbeam substantial leeway in testifying about her involvement in her children's educational and extracurricular activities.  Thus, evidence regarding how Longerbeam parented her older children was considered by the circuit court.  For these reasons, we conclude that the circuit court did not err by sustaining DSS's objection to the question at issue regarding the education of Longerbeam's adult children.

### C. THE CIRCUIT COURT DID NOT ERR BY DETERMINING THAT CARTER'S TESTIMONY WAS MORE CREDIBLE THAN SCHMAL'S TESTIMONY

Longerbeam also challenges the circuit court's decision to accept the testimony of Carter, the expert witness offered by DSS, over the testimony of Schmal, her own expert witness. Longerbeam argues that Carter's conclusions about Longerbeam's mental health condition were less credible than Schmal's conclusions regarding that subject because Carter only met with

Longerbeam three times and his associates assisted him in administering the psychological tests that he used to evaluate her. For these reasons, Longerbeam contends that the circuit court assigned too much weight to Carter's testimony.

The weight to be given to the opinion of an expert is a question for the trier of fact. See Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668-69 (1997) (*en banc*). "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Id. at 387, 488 S.E.2d at 668; see also Green v. Richmond Dep't of Soc. Servs., 35 Va. App. 682, 688, 547 S.E.2d 548, 551 (2001). "Determining the credibility of witnesses who give conflicting accounts is within the exclusive province of the [fact finder, who] has the unique opportunity to observe the demeanor of the witnesses as they testify." Harrison v. Harrison, 58 Va. App. 90, 103, 706 S.E.2d 905, 912 (2011) (alteration in original). "[T]his Court will not disturb the fact finder's determination of the credibility of witness testimony unless, 'as a matter of law, the testimony is inherently incredible.'" Dalton v. Commonwealth, 64 Va. App. 512, 526, 769 S.E.2d 698, 705 (2015) (quoting Walker v. Commonwealth, 258 Va. 54, 70-71, 515 S.E.2d 565, 575 (1999)).

In the present case, Carter's testimony was supported by his interactions with Longerbeam. He based his expert opinions on three separate meetings with Longerbeam in which he interviewed her and administered numerous psychological tests over the course of approximately six hours. While Carter's associates provided assistance during this evaluation process, Carter personally participated in the pertinent stages of Longerbeam's evaluation.

Although Schmal also saw Longerbeam on three occasions, he admitted that Carter had evaluated her more recently and that his assessment of her mental health condition was based on more current information. Unlike Carter, Schmal did not perform any psychological testing on

Longerbeam. Rather, his interactions with her consisted of an intake procedure and two counseling sessions.[7]

Under these circumstances, the circuit court did not err by accepting Carter's testimony and discounting the testimony of Schmal. As explained by the circuit court, Carter's opinions were based on a more thorough and more recent evaluation of Longerbeam. The circuit court appropriately weighed the credibility of the conflicting expert witnesses at issue, and concluded that Carter was more credible than Schmal. As Carter's testimony was not inherently incredible, we refuse to disturb the circuit court's credibility determination in this case.

## D. LONGERBEAM FAILED TO REMEDY THE CONDITIONS THAT LED TO HER CHILDREN'S PLACEMENT IN FOSTER CARE

As her primary argument, Longerbeam contends that the circuit court erred by concluding that she had failed to remedy the conditions that led to the placement of D. and L. in foster care. As such, Longerbeam contends that the circuit court erred in terminating her residual parental rights regarding D. and L. pursuant to Code § 16.1-283(C)(2). In light of the evidence presented by DSS concerning Longerbeam's failure to manage her mental health condition, we disagree with Longerbeam's argument.

"In matters of a child's welfare, [circuit] courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168, 754 S.E.2d 922, 927 (2014) (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463). "When reviewing a decision to terminate parental rights, we presume the circuit court 'thoroughly weighed all the evidence,

___

[7] Although Longerbeam claims that Schmal counseled her on additional occasions in the past, the record does not affirmatively support this conclusion. Schmal's testimony regarding his prior interactions with Longerbeam failed to establish that he had seen her more than three times, and the records provided from his office did not establish that he had counseled Longerbeam on additional occasions.

considered the statutory requirements, and made its determination based on the child's best interests.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 265-66, 616 S.E.2d 765, 769 (2005) (quoting Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). "Where the circuit court's judgment is based on evidence heard *ore tenus*, its decision to terminate a parent's rights is entitled to great weight and [the decision] 'will not be disturbed on appeal unless [it is] plainly wrong or without evidence to support it.'" Thach, 63 Va. App. at 168-69, 754 S.E.2d at 927-28 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463).

Code § 16.1-283(C)(2) permits a circuit court to terminate a parent's residual parental rights when:

> [t]he parent . . . , without good cause, [has] been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2) is primarily concerned with a parent's efforts to remedy the situation that led to the placement of his or her children in foster care. See Thach, 63 Va. App. at 170, 754 S.E.2d at 928. Termination decisions based on Code § 16.1-283(C)(2) "hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Toms, 46 Va. App. at 271, 616 S.E.2d at 772. Before a circuit court may terminate residual parental rights pursuant to Code § 16.1-283(C)(2), it must determine that the requirements of the statute have been established by clear and convincing evidence. See Thach, 63 Va. App. at 170, 754 S.E.2d at 928.

While Longerbeam complied with the majority of the goals set forth in her children's foster care plans, the evidence presented by DSS established that she had failed to substantially

remedy the conditions that led to her children's placement in foster care. Although Longerbeam obtained employment, adequate housing, and consistently took her psychiatric medication, the evidence of this case demonstrated that she had failed to successfully manage her mental health condition.

As demonstrated by the facts of this case, Longerbeam's bipolar disorder constituted a serious mental health condition that adversely affected her ability to parent her children. D. and L. were placed in foster care after Longerbeam stopped taking her psychiatric medication, repeatedly stabbed herself in the leg with a pair of scissors, and left the children in the care of strangers for approximately two months. Longerbeam had struggled with her bipolar disorder in the past, and she had previously been hospitalized for an extended period for the treatment of that condition.

Despite the persistence and severity of her bipolar disorder, Longerbeam failed to comply with all of the mental health requirements of her children's foster care plans. Specifically, Longerbeam failed to attend the therapy recommended by DSS and her psychological evaluation. Although Longerbeam resumed taking her psychiatric medication, Longerbeam only attended three therapy sessions following the placement of D. and L. in foster care. Both Carter and Schmal explained that Longerbeam would have benefited from attending additional therapy sessions.

After conducting a series of psychological testing and interviews with Longerbeam, Carter determined that she could not independently parent her children. While Carter acknowledged that Longerbeam was taking psychiatric medication, he concluded that the medication alone did not adequately manage Longerbeam's mental health disorders. Carter explained that he had observed Longerbeam behave in an inappropriately euphoric manner that was consistent with her bipolar disorder during his interactions with her.

Due to her mental health condition, Carter determined that Longerbeam would pose a risk to D. and L. if they were left in her care. Essentially, Carter concluded that the same mental health condition that posed a danger to the children around the time when they were placed in foster care still existed and that it was not managed to a degree that would allow Longerbeam to safely parent her children. While Schmal testified that Longerbeam's mental health condition was stable, as previously stated, the circuit court was free to disregard his testimony and accept the testimony of Carter. See Street, 25 Va. App. at 387, 488 S.E.2d at 668.

Based on Carter's testimony and Longerbeam's failure to participate in therapy, the circuit court concluded that Longerbeam had failed to remedy the conditions that led to the placement of D. and L. in foster care. As the evidence presented in this case supported this determination, we conclude that the circuit court's decision pertaining to this requirement of Code § 16.1-283(C)(2) was not plainly wrong or without evidence to support it. See Thach, 63 Va. App. at 168-69, 754 S.E.2d at 927-28. Accordingly, we affirm the circuit court's decision pertaining to this issue.

### E. THE TERMINATION OF LONGERBEAM'S RESIDUAL PARENTAL RIGHTS AND THE SUBSEQUENT PLACEMENT OF HER CHILDREN FOR ADOPTION WAS IN THEIR BEST INTERESTS

In a related assignment of error, Longerbeam contends that the circuit court erred "when it decided that it was in the best interests of the children to be placed for adoption." Her appellate argument pertaining to this assignment of error is two-fold. While Longerbeam's assignment of error refers to the circuit court's determination that the placement of D. and L. for adoption was in their best interests, her argument is contingent upon the circuit court's

conclusion that the termination of Longerbeam's residual parental rights was in the best interests of D. and L.[8] As these two arguments are intertwined, we will address them together.

The termination of residual parental rights pursuant Code § 16.1-283(C)(2) requires two separate inquiries. Id. at 169, 754 S.E.2d at 928. In addition to its specific requirements pertaining to a parent's failure to remedy the conditions that led to the placement of his or her children in foster care, Code § 16.1-283(C)(2) also requires a court to determine whether the termination of the parent's residual parental rights is in the best interests of the children. Id. The court must make this determination based on clear and convincing evidence. Id. at 170, 754 S.E.2d at 928. As explained previously, a court's decision to terminate a parent's residual parental rights "will not be disturbed on appeal unless [it is] plainly wrong or without evidence to support it." Id. at 168-69, 754 S.E.2d at 927-28 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463).

> In determining what is in the best interests of the child, the . . . court must evaluate and consider many factors: the age and physical and mental condition of the child; the age and physical and mental condition of the parent; the relationship existing between the parent and the child; the needs of the child; the role the parent has played, and will play in the future, in the upbringing and care of the child; and any other such factors that are necessary.

Id. at 169, 754 S.E.2d at 928.

In the present case, the circuit court reasonably concluded that the termination of Longerbeam's residual parental rights was in the best interests of D. and L. As previously discussed, the circuit court determined that Longerbeam had failed to remedy the conditions that led to her children's placement in foster care. Due to her inadequately managed mental health

---

[8] We reject Longerbeam's argument to the extent that she contends the circuit court failed to address the best interests of the children. The termination orders entered by the circuit court expressly stated that the termination of Longerbeam's residual parental rights was in the best interests of D. and L., and the circuit court addressed the best interests of the children when it explained its decision at the conclusion of the termination hearing.

condition, the circuit court concluded that Longerbeam continued to pose a risk to her daughters and that she could not safely parent them.

Furthermore, the circuit court emphasized that Longerbeam could not meet the special needs of D. and L. Carter's testimony established that both D. and L. had learning disabilities and emotional disorders of varying degrees. Due to these special needs, Carter opined that D. and L. would need increased parental attention that Longerbeam likely could not provide to the children.

While Carter acknowledged that Longerbeam's mental health condition could possibly be stabilized to a degree that would allow her to independently care for D. and L., he explained that it would take "many years" of medication and therapy to achieve this goal. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming [her] responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). As the evidence presented in this case established that Longerbeam could not safely or independently parent her children in the foreseeable future, the circuit court did not err by concluding that the termination of Longerbeam's residual parental rights was in the best interests of her children.

Longerbeam also contends that the circuit court erred by determining that the placement of D. and L. for adoption was in their best interests. This argument, however, is foreclosed by the circuit court's termination decision. "A preponderance-of-the-evidence standard governs judicial review of . . . foster care plan recommendations, while the more stringent clear-and-convincing-evidence standard applies to the ultimate termination decision." Najera v. Chesapeake Div. of Soc. Servs., 48 Va. App. 237, 240, 629 S.E.2d 721, 722 (2006). As clear and convincing evidence established that the termination of Longerbeam's residual parental rights was in the best interests of D. and L., the same evidence also satisfied the less stringent

preponderance-of-the-evidence standard applicable to the decision to approve the permanency plans recommending the placement of D. and L. for adoption.

As the evidence presented in this case supported the circuit court's conclusion that the termination of Longerbeam's residual parental rights was in the best interests of D. and L., we conclude that the circuit court did not err by terminating Longerbeam's residual parental rights and approving the permanency plans for the children with the goal of adoption.

## IV. CONCLUSION

In summary, we conclude that Longerbeam's evidentiary challenges pertaining to the admission of lay opinion testimony and the question about the education of her adult children are without merit. Additionally, we conclude that the circuit court did not err by determining that the testimony of Carter was more credible than the testimony of Schmal. Furthermore, we hold that the evidence presented in this case supported the circuit court's termination decision and its subsequent decision to place D. and L. for adoption. For these reasons, we affirm the circuit court's decision in this case.

<u>Affirmed.</u>